UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN ROBBINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 1:07-cv-0248-DFH-JMS |
| MILLIMAN USA LONG TERM | ) |
| DISABILITY INSURANCE PLAN, and | ) |
| THE PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA, | ) |
| | ) |
| Defendants. | ) |

ENTRY ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Kevin Robbins has received long term disability benefits from defendant Milliman USA Long Term Disability Insurance Plan, which is administered by defendant Prudential Insurance Company of America. Robbins seeks a declaratory judgment finding that defendants are not entitled to require him to produce unredacted tax returns, profit and loss statements, and other financial information from the corporation that now employs him.[1]

The relevant facts are undisputed, and both sides have moved for summary judgment. Mr. Robbins worked as an actuary for Milliman USA. He became

---

[1] The parties' dealings have been stormy, with prior litigation, interruptions of benefits, and more recently a termination of benefits based on the events at issue here. This case is framed only as a declaratory judgment action, and the court has treated it as such.

disabled in 2001 by a severe genetic lung disorder and qualified for long term disability benefits through the Plan. He has been able to work part-time from home, however, at times earning on the order of $5,000 per month. He has been working for Actuarial, Insurance and Management Services, Inc. ("AIM"). Mr. Robbins was an incorporator of AIM in 2002. He claims that he is "simply an employee of AIM." Pl. Br. 7. The undisputed facts show that Mr. Robbins is the only income-generating actuary and employee working for AIM, which he operates out of his home. His wife is the president and shareholder; she works for various companies as a nurse and is not an actuary.

Like many long term disability plans, the Plan allows for part-time work. After part-time earnings reach a high enough level, the Plan provides for a partial offset of those earnings against the benefits paid. If earnings reach 80 percent of the employee's earning level before the disability, then benefits are suspended. Under the Plan, defendants are entitled to require Mr. Robbins to provide satisfactory proof that he qualifies for the benefits he claims. Policy at 13, 24.

Defendants have demanded financial information about Mr. Robbins' earnings through AIM and about AIM's finances. Mr. Robbins has provided the W-2 forms that the corporation has issued to him as its employee. He has also provided redacted copies of the corporation's tax returns and profit-and-loss statements. The redacted profit-and-loss documents show the payroll (all paid to Mr. Robbins) and net profits, but few other details. Defendants have not been

satisfied with that information; they insist on unredacted corporate tax returns and profit-and-loss statements. Mr. Robbins has refused, arguing that defendants are not entitled to that information under the policy. The parties have clearly reached an impasse on the issue.

The court has federal question jurisdiction here because the Plan is governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* The parties have presented the court with an actual controversy appropriate for resolution under the Declaratory Judgment Act, 28 U.S.C. § 2201. The parties agree that the Plan does not grant discretionary power to defendants to interpret its terms, so that the court decides the issue *de novo.* See generally *Herzberger v. Standard Insurance Co.*, 205 F.3d 327, 329-31 (7th Cir. 2000); *Diaz v. Prudential Insurance Co.*, 424 F.3d 635, 636-39 (7th Cir. 2005) (finding that plan administrator's right to insist on "satisfactory" proof of eligibility for benefits did not give administrator discretionary authority to interpret plan).

To evaluate Mr. Robbins' eligibility for continued disability benefits and to determine the amount of any benefits, defendants are entitled to accurate information about Mr. Robbins' actual earnings. The Plan does not draw sharp lines as to precisely which financial information defendants can demand. The Plan provides:

> If your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.
>
> Prudential may require you to send proof of your monthly disability earnings on a monthly basis.  We will adjust your payment based on your monthly disability earnings.
>
> As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

Policy at 13.  By its terms, then, the Plan allows the defendants to insist on disclosure of "appropriate financial records" that they believe are necessary to decide the amount of disability earnings.  The term "including" in the last quoted passage does not limit the types of financial records defendants may demand.  The Plan imposes only a standard of reasonableness for those demands.  The undisputed facts here show that defendants' demands for the unredacted corporate financial information are reasonable.

Mr. Robbins argues that the policy allows defendants to demand financial information pertaining only to him, the insured person, and not to his employer.  In this case, however, the undisputed facts show that Mr. Robbins is the only employee providing any substantial amount of the services the business provides to its customers and thus generating income for the employer.  The employing corporation's profits stay within his household, with his wife.  Under these circumstances, it is reasonable for defendants to insist on seeing the details of the

Case 1:07-cv-00248-DFH-JMS   Document 39   Filed 11/20/07   Page 5 of 9 PageID #: 423

company's finances to evaluate whether the reported salary for Mr. Robbins is a fair reflection of his actual earnings and earning capacity.[2]

Mr. Robbins' argument to the effect that there is no factual basis here for "piercing the corporate veil" is beside the point. Defendants are not seeking to hold a shareholder liable for the debts of the corporation. They seek only information that will allow them to assess Mr. Robbins' true earnings and his earning capacity. He and his wife were certainly free to create the corporation as the vehicle for his part-time work as an actuary. But they are not free to insist that defendants continue paying Mr. Robbins thousands of dollars every month because of his disability when they refuse to produce relevant financial information needed to assess his eligibility for those benefits.

Mr. Robbins correctly points out that whether to "pierce a corporate veil" is a "highly fact sensitive inquiry." Pl. Reply Br. 3, citing *Community Care Centers, Inc. v. Hamilton*, 774 N.E.2d 559, 564 (Ind. App. 2002). That argument actually supports the defendants' position here. To conduct that "highly fact sensitive inquiry," one needs detailed information about the corporation. Only with that information could one determine whether "the corporation was so ignored, controlled or manipulated that it was merely the instrumentality of another, and that the misuse of the corporate form would constitute a fraud or promote

---

[2]A law firm representing AIM asserted that the requested financial information was "proprietary." There is no serious claim or evidence here that this one-man actuarial firm's financial records contain true trade secrets.

-5-

injustice." See *id.* at 565. Only with that information here can defendants evaluate Mr. Robbins' true earnings and earning capacity.

In this case, defendants do not need to prove that there is anything fraudulent or abusive about AIM's accounting or its relationship with Mr. Robbins. Because he asserts an entitlement to several thousand dollars every month from defendants, they have a right to ask questions about whether he is in fact entitled to that money. The facts known to defendants gave them a reasonable basis for wanting to inquire further. It would not be unduly difficult for Mr. and Mrs. Robbins to account for the value of his actuarial services in ways that would not appear in either the wages paid to him or the net profits of the corporation.[3] The court is not saying that Mr. and Mrs. Robbins have done anything wrong in their management of the corporation or in their accounting for its finances. The court is saying only that defendants have a reasonable basis for demanding the more detailed information to evaluate Mr. Robbins' continued eligibility for disability benefits.

It is easy to imagine other disability insurance cases in which an insurer's or plan's demands for detailed information about an employer's finances would

---

[3]To take one example that is probably too simple, in theory it would be possible for Mr. and Mrs. Robbins to charge the corporation an unreasonably high amount of rent for the corporation's use of space in their home. The excessive rent would not show up as salary for Mr. Robbins or in net profits of the corporation, yet the money generated by Mr. Robbins' work to pay the excessive rent should be taken into account in evaluating his eligibility for benefits.

-6-

clearly be unreasonable, or would at least present closer questions. In this case, however, the undisputed facts show that the person claiming disability benefits produces all of the income of the nominal corporate employer, which is entirely owned by his wife and controlled by him and/or his wife. This case does not require the court to draw the boundary more sharply between reasonable and unreasonable demands as it might apply in future, perhaps more debatable cases. In this case, defendants' demands for additional financial information were not contrary to the terms of the Plan.[4]

Therefore, Mr. Robbins is not entitled to a declaratory judgment that there was such a violation. Plaintiff's motion for summary judgment is denied, and defendants' motion for summary judgment is granted. The court is not ruling directly on defendants' August 2006 termination of benefits to plaintiff because the plaintiff has not yet exhausted administrative remedies. See *Stark v. PPM America, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004) (recognizing that exhaustion of plan remedies is favored and within the district court's discretion to require).

---

[4]Defendants point out that the Social Security Administration may consider such information in deciding eligibility for disability insurance benefits under the Social Security Act. The regulations governing whether a claimant has engaged in "substantial gainful activity" state that in considering a self-employed person, the government "will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services." 20 C.F.R. § 404.1575(a)(2). A claimant cannot avoid being considered self-employed by merely setting up a corporation he controls and then having that corporation employ him.

Each side has asked for an award of attorney fees, which ERISA authorizes in favor of a prevailing party. 29 U.S.C. § 1132(g). Mr. Robbins has not prevailed and is not entitled to fees. Defendants' request has considerably more force. The Seventh Circuit has recently explained that the test for awarding attorney fees under ERISA is whether the losing part's position had "substantial justification." *Sullivan v. William A. Randolph, Inc.*, 2007 WL 2891423, at *3-5 (7th Cir. Oct. 5, 2007).[5] Mr. Robbins' position in this case is weak and at least borders on the unreasonable. In light of the parties' long history of disputes, however, all of which have previously resulted in retroactive payment of benefits to Mr. Robbins, the court exercises its discretion not to award fees, primarily because a truly fair assessment of that issue would require a much more detailed examination of the entire course of the parties' dealings than either side has provided or proposed.

Accordingly, the court will issue a declaratory judgment consistent with this entry, declaring that defendants' demands for unredacted corporate tax returns and profit and loss statements did not violate ERISA or the terms of the Plan.

So ordered.

---

[5]*Sullivan* resolved more than two decades of tension between two different but closely parallel tests for awarding attorney fees under ERISA in the Seventh Circuit cases. See, *e.g.*, *Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 339 (7th Cir. 2004); *Sullivan*, 2007 WL 2891423, at *4-5 (explaining that five-factor test set forth in *Janowski v. International Brotherhood of Teamsters Local 710 Pension Fund*, 673 F.2d 931, 940 (7th Cir. 1982), is consistent with and helps structure the "substantially justified" standard adopted in *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 828-30 (7th Cir. 1984)).

Date: November 20, 2007

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Edna Sybil Bailey
WILSON ELSER MOSKOWITZ EDELMAN & DICKER
edna.bailey@wilsonelser.com

Daniel John McMahon
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
mcmahond@wemed.com

Bridget L. O'Ryan
O'RYAN LAW FIRM
boryan@oryanlawfirm.com